JACK J. THEWS, appellee, v. ELDON MILLER et al., appellants.

LEROY D. LINDSAY, appellee, v. ELDON MILLER et al., appellants.

MILO W. HIRTH et al., appellees, v. ELDON MILLER et al., appellants.

No. 51012.

(Reported in 121 N.W.2d 518)

MAY 7, 1963.

Thomas M. Collins, of Cedar Rapids, for appellants.

D. C. Nolan, William L. Meardon, William F. Sueppel and Ansel Chapman, all of Iowa City, for appellees.

PETERSON, J.—This action involves only one legal question. Was the trial court authorized to enter an order of default as to defendants? Did the trial court err in overruling the motion to set aside the defaults in these three cases joined for appeal to this court? The trial court did enter defaults and did overrule the motions to set the defaults aside. Under order allowing interlocutory appeal the defendants appealed.

The chronological sequence of filing of pleadings and the default order in the Thews case were as follows: March 18, 1955, plaintiff filed petition for judgment against defendants as to moneys owing and as to damages; April 5, 1955, defendants filed motion to separate counts; September 22, 1955, defendants' motion sustained in part requiring further pleadings by plaintiff; March 6, 1958, plaintiff granted leave to file amendment to petition; March 6, 1958, plaintiff filed amended and substituted petition; March 6, 1958, plaintiff filed motion to adjudicate law points; this was never ruled upon; March 6, 1958, plaintiff filed motion to set cause for trial; this was never ruled upon; July

18, 1960, defendants filed motion for more specific statement; never ruled upon; October 6, 1961, order of court was entered for default as against defendants.

The two other cases joined with the Thews case for hearing in the trial court, and on appeal to this court, are Lindsay v. Eldon Miller et al., and Hirth and Harris v. Eldon Miller et al. It is not necessary to show the chronological sequence of pleading in such two cases. They are substantially the same as in the Thews case.

█ The following pleadings were filed after the default had been entered by the trial court as to all three cases: September 20, 1962, defendants filed petitions and motions to set aside defaults; October 16, 1962, plaintiffs filed motion to dismiss defendants' motions to set aside default; November 16, 1962, hearing was had by the trial court as to the petitions and motions; November 30, 1962, findings, rulings and order of trial court filed overruling motions to set aside default; December 10, 1962, application for interlocutory appeal; December 19, 1962, order of this court allowing interlocutory appeal; December 19, 1962, defendants duly and timely filed notice of appeal in the three cases.

Although R. C. P. 230 was in effect and had been in effect since 1943 the trial court in the three cases at bar failed to give any attention to the rule and in fact did not mention nor refer to such rule in its findings, rulings and order upon the motions to set the default aside.

Rule 230 is as follows, together with comments as to each section thereof:

"230. Default defined. A party shall be in default whenever he

"(a) fails to appear as required in rule 53 or 54, or, has appeared, without thereafter filing any motion or pleading as stated in rule 87;" (defendants first filed motion to separate counts which was sustained in part; plaintiff filed amended and substituted petition and filed motion to adjudicate law points; this motion was never ruled upon; plaintiff filed motion to set cause for trial which was never ruled upon; defendants filed

motion for more specific statement which was never ruled upon and was in force and effect at the time of the default)

"or (b) fails to move or plead further as required in rule 86, unless judgment has already resulted under rule 87;" and (this part of the rule was not violated; pleadings were filed as shown under (a))

"or (c) withdraws his pleading without permission to re-plead, or withdraws his appearance or fails to present himself for trial;" (no pleading was ever withdrawn and since the cases were not set for trial there was no obligation under the rule for defendants to present themselves for trial)

"or (d) fails to comply with any order of court or do any act which permits entry of default against him, under any rule or statute." (Defendants were never guilty of failing to comply with any order of court nor did they do any act which permitted entry of default against them under any rule or statute.)

The record does not disclose that plaintiff filed any motion requesting default of defendants. It appears from the record *that* on October 6, 1961, the trial court proceeded to default the defendants in the three cases at bar. It was by accident that one of defendants' counsel discovered the defaults. According to his testimony he happened to be in the courtroom one day when plaintiff's attorney was proceeding to prove up his cases by the necessary evidence, in view of the defaults. Defendants' attorney objected and the proof was not offered. It quickly followed that on September 20, 1962, defendants filed a petition and motion in each case to set aside the defaults. The orders defaulting de-fendants in each case were simply calendar orders. It clearly appears from the chronological sequence and from the facts above stated that motions were pending in all three cases when the order for default was entered.

The trial court outlined three reasons for ignoring R. C. P. 230 and entering default against defendants.

1. The court assumed ruling as to the motions had been waived and abandoned. There is no basis for this assumption. It is true that both the plaintiffs' motions and defendants' mo-tions had been pending for a long period of time. Part of the

delay was that Mr. Huntsman had claims against defendants somewhat similar to the claims involved in these three cases. Defendants had appealed to this court and a certain length of time was involved in reaching the appeal and deciding the case. It is entitled Huntsman v. Eldon Miller, Inc. The decision was announced on March 8, 1960; it appears in 251 Iowa 478, 101 N.W.2d 531.

■ This caused part but not all of the delay. Other factors entered into the situation, but the fact remains that in the Thews case there had been two motions filed by plaintiff and one motion filed by defendant which had never been acted upon. In the Lindsay case there was one motion by plaintiff and one by defendant upon which no ruling ever had been made. In the Hirth and Harris case there was one motion by plaintiff and one by defendant that had never been acted upon. Under these circumstances there was no basis for holding that the defendants had waived and abandoned their cases. Ordinarily waiver and abandonment alone do not form a basis for default. There are methods under the rules for action which will promptly bring cases to a close, but the trial court did not avail itself of such methods.

2. The only rules referred to by the trial court were rules 236 and 252. Rule 236 pertains only to reasons for setting aside defaults. The motion under said rule must be filed within sixty days from the entry of the default so it would not pertain to the cases at bar. Rule 252 also pertains to motions for vacation or modification of judgments. Same can be filed within a year from the entry of the default and would be applicable to the cases at bar. The trial court, however, did not desire to avail itself of any of the provisions of the rule.

■ 3. The trial court based its ruling somewhat upon the fact that two Iowa City law firms had withdrawn their appearance for defendants on or about February 18, 1960, and one Des Moines law firm having withdrawn on July 18, 1960. In the first place the withdrawal of the law firms does not withdraw the motions which were filed nor the effect of failure not to rule on such motions. Defendants are still in court and the withdrawal of appearance of some attorneys does not affect the motions and

does not open the gate for the entrance of default. In the second place there is a serious question from the record as to whether there ever was a complete withdrawal of defendants' attorneys. The firm of Messer, Hamilton & Cahill, later Messer & Cahill, had been attorneys for defendants for several years. Mr. Cahill testified that he was the one who had discovered that the defaults were entered against defendants in the three cases. He testified:

"Q. Now when did you first have anything to do with any one of these three cases? A. You mean me, personally?

"Q. Yes, sir, you personally. A. It would have been some time subsequent to the middle of the summer of 1961.

"Q. And what called your attention to these three cases, if anything? A. Well, the thing that initially called my attention to those three cases was that I happened to walk into the courtroom one day when you, Mr. Meardon, were in the process of proving up a default in another case against Eldon Miller, and I overheard what was going on.

"Q. And until that time you had no personal contact with Mr. Miller or anyone else about any one of these three particular cases? A. No sir. I had personal contact with Mr. Miller on other things and was vaguely aware of the existence of these and other cases, but there had been no specific conversation between Mr. Miller and myself with regard thereto.

"Q. I see. Until after the defaults? A. After I heard that business out in the courtroom."

Under cross-examination by Mr. Collins the following colloquy occurred:

"Q. You said you first became aware of these three cases that we are discussing today subsequent to the summer of 1961, and after that date did you then confer with Eldon Miller, one of the defendants, during the following period of time and up until quite recently, with respect to these cases? A. Repeatedly.

"Q. And you have counseled him as attorney in that respect? A. I certainly was a lawyer, I certainly undertook to advise him. As to whether or not Mr. Miller really considered

me his attorney, I have no way of knowing. Mr. Collins: No, that would be a conclusion."

Under redirect examination the following occurred: questions by Mr. Meardon.

"Q. Now then, Mr. Cahill, in view of this most recent question that was asked you, I will ask you whether or not you requested me to defer taking any proof in the various defaults on these cases until it could be ascertained whether or not the matters could be settled by negotiation? A. Yes, I did.

"Q. And that over the ensuing period from the time these defaults were entered in the particular case here, have there not been numerous conferences relative to negotiation of settlement of these various cases along with other cases? A. I would say beginning probably as soon as four or five days after the defaults were entered and continuing up until about, well, not more than sixty days ago and probably less, there have been any number of conversations between yourself and myself in this regard."

In response to the trial court's objections with reference to the weight to be given, if any, to the fact that some attorneys had withdrawn it appears that at least one of the attorneys for defendants was caring for their interests up until the time the motions were filed for setting the defaults aside. Very shortly after the time referred to by Mr. Cahill, Mr. Thomas M. Collins appeared for defendants and filed the motions. Although we do not consider the matter very important, it does seem that defendants were at all times represented by some counsel.

Some citations were made by the appellees, and the trial court in its opinion cited four cases. We will not give them consideration because the decisions were all made prior to the time R. C. P. 230 was adopted in 1943. The adoption of the rule and its effectiveness since the date of adoption is the important matter in the case at bar. The rule controls the situation.

We take this occasion to stress the importance of the Rules of Civil Procedure. They have been adopted for a definite purpose. If the courts of our state will abide by the rules, court administration will be expedited. The pathway of the trial court in the cases at bar could only lead to chaos, which we are striving

to avoid in promulgating Rules of Civil Procedure. Local trial courts and the courts of each district cannot adopt and proceed according to rules which are contrary to the rules adopted by this court. We recognize the fact that there are certain areas in which the rules of this court are not effective and local rules can occupy such areas. However, this is not true in the cases at bar.

The orders of the trial court in entering defaults against the defendants in the cases at bar are cancelled and the orders of the trial court refusing to set aside the defaults in the three cases at bar are reversed.

The trial court was correct in stating that there has been undue delay in the prosecution and trial of the cases at bar. Defendants, however, are not anymore to blame than plaintiffs. In fact, while there is no rule upon the subject, it is generally understood that plaintiffs should be diligent in securing the trial of their cases. Defendants normally are not so vitally interested in a trial. It usually does not prejudice defendants if a case is not tried promptly nor if it is never tried. We, therefore, urge upon plaintiffs in the cases at bar to proceed promptly in the trial of such cases or if they are not desirous of trying same, to dismiss them.—Reversed.

All JUSTICES concur except LARSON, J., who takes no part.