YULIN LI, on Behalf of Gordon LEE, his Minor Son, and on his own behalf, Plaintiffs–Appellants,

v.

Joni RIZZIO, Defendant–Appellee.

No. 10–0677.

Court of Appeals of Iowa.

April 13, 2011.

Thomas F. Ochs of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, guardian ad litem for appellant Lee.

Timothy S. White and Raymond Rinkol, Jr., of White Law Firm, P.L.C., for appellants.

William H. Roemerman of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for appellee.

Heard by VOGEL, P.J., and DOYLE and TABOR, JJ.

TABOR, J.

This appeal poses the question whether a parent who is not an attorney must be represented by legal counsel when litigating a personal-injury lawsuit on behalf of his child. Finding no Iowa case address-

ing this question, we join courts from those jurisdictions holding that non-attorney parents' representation of their minor son or daughter constitutes the unauthorized practice of law. Having determined the father in this case engaged in the unauthorized practice of law when representing the interests of his son, we set aside as void the judgment as to the child's claims. We dismiss the portion of the father's appeal arguing for a new trial on behalf of the child. Further, we decline to grant a new trial on the father's loss-of-consortium claim because it was the jury's province to decide the question of negligence. Finally, we decline to grant a new trial on the ground that an irregularity occurred because the father did not preserve error on that claim.

## I. Background Facts and Proceedings

On or about February 18, 2005, defendant Joni Rizzio provided in-home daycare for then eleven-month-old Gordon. While in Rizzio's care, Gordon tumbled down a flight of stairs. The parties offer different accounts about how the fall occurred. Yulin Li, Gordon's father, contends Rizzio negligently left a door open and Gordon, who was in a baby walker at the time, went through the doorway and fell—by himself—down the entire flight of stairs, landing on a concrete basement floor. Rizzio maintains she was holding Gordon in her arms when she fell part way down the stairs.

Yulin filed suit, acting pro se for his own claim and as next friend on behalf of Gordon. Yulin alleged Rizzio was negligent and that both he and Gordon suffered damages as a consequence. His petition included two counts: first, that Gordon sustained permanent injury, as well as "severe and permanent pain and suffering" as a consequence of Rizzio's negligence, and; second, that Yulin incurred expenses and

lost "the society and services of a healthy child to which [he] was entitled" as a result of Rizzio's negligence.

A jury heard the case from November 16 until November 19, 2009. Yulin tried both his own claims and Gordon's claims without the assistance of counsel. On November 19, 2009, the jury returned a unanimous verdict finding Rizzio was not negligent in providing care for Gordon.

### A. Post–Trial Motions & Proceedings

On November 30, 2009, Yulin filed a motion for a new trial on behalf of himself and his son. Yulin alleged the district court should grant a new trial because (1) "[p]laintiffs did not receive a fair and impartial trial and therefore substantial justice was not effectuated", (2) neither substantial evidence nor law supported the verdict, and (3) he discovered new audiotape evidence material to the jury's verdict. Rizzio resisted and the issue was set for a hearing.

Before the hearing, two attorneys filed appearances on behalf of Yulin personally and in his capacity as Gordon's next friend. Yulin's counsel requested that the hearing be continued, that they be granted leave to amend the motion for new trial, and that the court appoint a guardian ad litem for Gordon. On January 19, 2010, the district court continued the hearing, granted the plaintiffs' motion to amend, and appointed a guardian ad litem for Gordon.

On February 22, 2010, Yulin's counsel filed an amended motion for a new trial on Gordon's behalf; the motion asserted irregularity in the proceedings as a new ground for relief. The motion urged the district court to grant a new trial for three reasons: (1) because the court failed to appoint a guardian ad litem for Gordon, irregularity occurred and the child's interests were insufficiently protected; (2) neither substantial evidence nor law sup-

ported the verdict because Rizzio "was negligent under any theory provided in court"; and (3) Yulin discovered new, material evidence not available at trial.

On March 1, 2010, the day before the hearing on the new-trial motion, Gordon's guardian ad litem (GAL) filed a report contending Yulin engaged in the unauthorized practice of law by representing Gordon before the district court. The GAL argued Gordon was entitled to a new trial where his claims should be presented by a licensed attorney. The GAL, in essence, argued that a parent, having initiated a lawsuit as a next friend on behalf of a child, may not also act as the attorney for the child because doing so amounts to the unauthorized practice of law and contravenes a child's right to trained legal assistance.[1]

Rizzio responded to the GAL report on March 2, 2010, the day of the hearing. She asserted the report raised a new issue—that Yulin engaged in the unauthorized practice of law—and contended the district court could not reach the merits because it was not raised within the time permitted for post-trial motions. Rizzio argued, in the alternative, that "the finding of unauthorized practice [of law] has no effect on the validity of judgments rendered before the date of the finding," and the GAL neither asserted nor proved prejudice arising from the alleged unauthorized practice, which is required. Finally, Rizzio contended Iowa law allows a next friend to proceed pro se on behalf of a

minor until directed otherwise by the court because such matters are governed by the court's "inherent power to police its own proceedings."

On March 2, 2010, the district court held a hearing on the motion for a new trial. After the hearing, the GAL filed a document captioned "Reply to Defendant's Response to Report of Guardian Ad Litem." In that document, the GAL abandoned its claim that Gordon should receive a new trial and instead argued the adverse judgment on Gordon's claim was null and void. With respect to preservation, the GAL argued the issue was properly before the court because a void judgment can be attacked at any time. With respect to the substantive argument, he asserted Yulin's representation of Gordon's claim was unauthorized and resulted in two consequences that rendered the judgment void: (1) the court did not obtain personal jurisdiction over Gordon,[2] and (2) permitting Yulin to prosecute Gordon's claim violated Gordon's due process rights. The GAL contended a next friend is not authorized to bring suit on behalf of another without legal representation because our rules restrict who may practice law and no statute, court rule, or appellate decision allows non-lawyer parents to represent their children in court proceedings. Moreover, he argued parents, acting as next friends, cannot appear pro se on behalf of their children because pro se litigants represent their own claims. But next friends are not

---

1. The GAL conceded that "Li's capacity to act as Gordon's lawyer was never raised during the course of the proceedings in this case" and was raised for the first time in post-trial proceedings.

2. The GAL argued personal jurisdiction over Gordon did not exist because "Gordon's appearance before the court in this case was without authorization.... [Gordon] could not appear by a non-lawyer. Logically, if he was

prohibited from appearing on his own or through his father, acting pro se, then Gordon literally has not appeared in this matter, and the Court did not have personal jurisdiction over him at any point in the proceedings." The GAL argued that "[e]xercising personal jurisdiction over Gordon when he was never properly represented and could not act for himself is a fundamental denial of his rights to due process."

parties in the suit and cannot be said to be representing their own claims. Rather, they are representing the claims of another—the child.

On March 24, 2010, the district court issued an order declining to grant a new trial or to void the judgment. The court declined a new trial on the grounds of irregularity, explaining it was proper for Gordon to proceed via a next friend rather than a guardian ad litem. The court viewed Yulin's argument as a "quibble over a meaningless distinction," stating that "legally there is no meaningful distinction between a 'next friend' and a guardian ad litem." The court reasoned that both positions perform the same duties and operate under the court's supervision; and neither a next friend nor a guardian ad litem is required to be an attorney. According to the court, "[t]he only difference between the two offices is in the creation"—a " 'next friend' is someone who volunteers" while a "guardian ad litem is someone drafted by the court." It also expressed concern that our law has no provision providing compensation for a guardian ad litem in this civil context.

The court also concluded the verdict administered substantial justice and was supported by both substantial evidence and law, noting "[e]vidence is not insubstantial simply because it may support contrary inferences," and the jury's " 'no' verdict merely demonstrate[d]" Yulin failed to satisfy his burden. The court further found that because Yulin possessed the audiotape alleged to be newly discovered evidence for more than four years before trial, the tape did not support granting a new trial.

The court also declined to hold the adverse judgment was void. Although the court opined the issue was not properly before it because the claim was raised in a "report to the court" and not a "motion," the court nevertheless addressed the merits of the claim. It noted the GAL cited no authority supporting its contention that a child's constitutional rights to due process are violated when "a parent appears pro se . . . acting as a minor child's next friend." And, in the absence of case law or statutory authority supporting that position, the court declined to "find that permitting Gordon's father to appear pro se as Gordon's next friend [was] a procedural defect serious enough to constitute a violation of his due process rights, or [was] jurisdictional, which would render the verdict void." The court further lamented:

> [If it] void[ed] the judgment in this case, it could put in peril other judgments entered in name changes, domestic abuse protective orders, and other civil matters where a parent has appeared pro se when filing an action as next friend for their minor children.

### B. Appellate Proceedings

Both Yulin's attorneys and Gordon's GAL filed briefs appealing the district court's decision. But they seek different remedies. Yulin, on behalf of himself and on behalf of Gordon, asks for a new trial. The GAL argues the correct remedy is to void the adverse judgment on Gordon's negligence claim.[3]

#### 1. Yulin's Appeal

Yulin, through counsel, argues we should grant a new trial on both his loss-of-consortium claim and Gordon's personal-injury claim for these two reasons: (1) neither substantial evidence nor law supports the verdict because Rizzio was negligent "under any plausible factual scenario"; and (2) an irregularity in the proceedings occurred when the court

---

**3.** The GAL limits his argument to voiding the judgment on Gordon's claim; he does not assert we should void the judgment with respect to Yulin's consortium claim.

failed to appoint a guardian ad litem for Gordon. The second argument alleges the district court should have appointed an *attorney* as guardian ad litem,[4] reasoning as follows:

A non-lawyer cannot be expected to have the ability to navigate through a personal injury case, and the court has a duty to provide a vulnerable child with the means to attain the justice they cannot reach on their own. Where the Iowa Code is silent, the courts should appoint a practicing attorney to represent a child as a guardian ad litem when a non-attorney is unable to properly protect the child's best interests.

Yulin further urges that although Iowa law makes no provision for compensating a court-appointed guardian ad litem under these circumstances, the "Iowa Code provide[s] ample options" in other contexts. Drawing on those provisions, Yulin argues that here, "the guardian ad litem can be compensated by the parent(s) if they are financially able to do so, or by the party responsible for court costs or the county, if they are not."

### 2. GAL's Appeal

Gordon's GAL also appeals, arguing the judgment on Gordon's negligence claim is null and void. The GAL asserts Yulin engaged in the unauthorized practice of law when he tried Gordon's claim to the jury. The GAL further alleges that two consequences resulting from the unauthorized practice require this court to void the judgment: (1) the district court failed to obtain personal jurisdiction over Gordon; or (2) Gordon did not receive due process. The GAL submits that a non-attorney parent facilitating a child's claim as next friend "must be represented by an attorney to maintain a lawsuit on behalf of a child."

The GAL maintains a non-attorney next friend who prosecutes a child's claim engages in the unauthorized practice of law because Iowa's court rules "require, at least implicitly, that persons wishing to practice law in Iowa be admitted to the bar" and because "no rule or statute authorizes a non-lawyer acting in a representative or fiduciary role, such as ... next friend, to practice law." Moreover, a next friend cannot bring a child's claim pro se because a pro se litigant represents his or her *own* claims, and a next friend does not litigate his or her *own* claims—rather, the next friend facilitates judicial review of a minor child's claims.

As a result of the next friend's unauthorized practice, the GAL asserts, the district court failed to obtain personal jurisdiction over Gordon because "Gordon's appearance before [the district court] essentially was without authorization" since "Gordon could not be a party in his own right" and "could not appear by a non-lawyer." The GAL explained its reasoning as follows:

Logical deduction compels the conclusion that if Gordon was prohibited from appearing on his own or through his father, acting pro se, and was not legally competent to waive such protections ... then he literally did not appear in this matter in the legal sense, and the district court did not have personal jurisdiction over him at any point in the proceedings. A judgment entered in the absence of personal jurisdiction is void.

The GAL argued, in the alternative, that if the court did have personal jurisdiction over Gordon, permitting Yulin to prosecute

**4.** As support for this position, Yulin cites several Iowa Code provisions, Federal Rule of Civil Procedure 17(c)(2), and several federal cases that require or suggest a guardian ad litem be appointed on behalf of a child.

Gordon's claim violated Gordon's due process rights. He contended "Gordon was deprived of qualified representation" and "[e]xercising personal jurisdiction over Gordon when he was never properly represented and could not act for himself is a fundamental denial of ... due process."

### 3. Rizzio's Resistance

Rizzio resists, arguing the district court properly declined to grant a new trial and to void the judgment. She asserts Yulin failed to preserve his argument for a new trial on the grounds of irregularity because he first raised the issue more than thirty days after the judgment, which is too late to "inject [a] new issue into the case." In the alternative, she argues the court has discretion and is not required to appoint a guardian ad litem, citing permissive, rather than mandatory language in Iowa Rule of Civil Procedure 1.210.[5] She contends the district court did not abuse its discretion in failing to appoint a guardian ad litem because Gordon was protected by a next friend, who fulfilled the same duties on behalf of Gordon that a guardian ad litem would have performed. Rizzio further alleges Iowa law does not require a guardian ad litem to be an attorney in an ordinary civil case and asserts, moreover, that our law makes no provision for compensating a court-appointed guardian ad litem in such a case. She also argues plaintiffs must show prejudice to be awarded a new trial and they failed to do so here. Rizzio further asserts the district court correctly declined to grant a new trial on the basis that the verdict was not supported by sufficient evidence or law.

Rizzio also contends the GAL's claim to void the judgment was not preserved for appeal. With respect to the merits, Rizzo argues courts have the inherent power to control their proceedings, which includes the power to allow "next friends (or anyone else) [to] appear without an attorney until the court tells them that they can't." She asserts, moreover, that even if Yulin committed the unauthorized practice of law, that "would not provide grounds to void the judgment" because our supreme court has concluded that the "unauthorized practice has no effect on the validity of judgments rendered before the unauthorized practice was enjoined." She further contends the district court did have personal jurisdiction over Gordon because "he was properly before the court via the next friend." Rizzio also urges that equity supports sustaining the verdict because "overturn[ing] the verdict after the fact on the basis that the losing parties complain of their own alleged misdeed is simply unfair."

## II. Analysis

We address the GAL's request to void the judgment first because the result impacts our analysis of Yulin's argument for a new trial.

### A. GAL's Argument: Void the Adverse Judgment on Gordon's Claim

#### 1. Scope & Standard of Review

We review for correction of errors at law. *See In re Marriage of Engler*, 532 N.W.2d 747, 748 (Iowa 1995) (stating questions of jurisdiction, authority, and venue

5. Iowa Rule of Civil Procedure 1.210 provides as follows:

> An action of a minor ... shall be brought by the person's conservator if there is one or, if not, by the person's guardian if there is one; otherwise the minor may sue by a next friend.... If it is in the person's best interest, the court may dismiss such action or substitute another conservator, guardian or next friend."

are legal issues reviewed for correction of errors at law).

### 2. Error Preservation

█ Rizzio contends the GAL did not preserve error on the argument that we should void the adverse judgment on Gordon's claim.[6] Although the GAL brought this claim before the court relatively late in the proceedings in a document captioned "Reply to Defendant's Response to Report of Guardian Ad Litem," the district court nevertheless ruled on the issue.

The purpose behind our error preservation rules is to ensure district courts the opportunity to correct or avoid errors and to provide appellate courts with a record to review. *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003).

> "[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable."

*Id.* (citation omitted).

In the case before us, both the GAL and the defendant advanced their arguments on this claim before the district court—providing the court the opportunity to consider and rule on the issue. Because the district court analyzed the parties' arguments and decided the claim in its order, the purpose behind our error preservation principles was accomplished here. Moreover, we recognize that a void judgment may be attacked at anytime. *Williamson v. Williamson*, 179 Iowa 489, 494, 161 N.W. 482, 485 (1917) (noting a party moving to void a judgment "is not limited to any time within which to file or present [a] motion"); *Johnson v. Mitchell*, 489 N.W.2d 411, 414 (Iowa Ct.App.1992) ("[A] judgment may be vacated at any time if it is void.").

Because the district court reached the substance of the GAL's argument and rendered a decision on that issue, and because a party may attack a void judgment at any time, we reach the merits of the GAL's claim.

### 3. Merits

The GAL argues Yulin engaged in the unauthorized practice of law when he tried Gordon's claims to the jury without legal representation. The GAL points to two undesirable results arising from that unauthorized representation: the lack of personal jurisdiction over Gordon and a violation of Gordon's due process rights. The question whether non-attorney parents may represent their minor son or daughter in a personal-injury lawsuit appears to be one of first impression in Iowa. We are persuaded by the reasoning employed by courts from those jurisdictions that have found such representation to constitute the unauthorized practice of law. Because we determine the father in this case engaged in the unauthorized practice of law when representing his son's interests, we set aside as void the adverse judgment as to the child's claims. Because Yulin's unauthorized practice of law itself renders the judgment in this case void, we do not reach the personal jurisdiction and due process arguments asserted.

---

6. She contends the issue was not preserved because it "was not raised by any party prior to the entry of judgment," it "was not raised by any party within the time period provided for new trial pursuant to" Iowa Rule of Civil Procedure 1.1007, and there "has been no motion ... or petition to vacate the judgment"—citing the district court's observation that the issue came before it "not on motion, but on a 'report to the court.'"

We start with the threshold task of defining the unauthorized practice of law. Our supreme court is vested with the "inherent authority to define and regulate the practice of law" in Iowa. *Iowa Supreme Ct. Comm'n on Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679, 681 (Iowa 2001). Although our supreme court has not articulated an " 'all-inclusive definition of the practice of law,' " it has stated that the practice of law includes "exercis[ing] ... professional judgment" and " 'representing another before the courts.' " *Bergantzel v. Mlynarik*, 619 N.W.2d 309, 312 (Iowa 2000) (citations omitted).

■ Although Yulin submits that our supreme court has not exercised its regulatory authority to preclude laypersons from practicing law, our case law and court rules suggest otherwise. Our supreme court interpreted its own rules to "requir[e] that persons desiring to practice law in Iowa be admitted to the bar." *Id.* The natural corollary to the court's pronouncement is that one not admitted to the bar in Iowa—which necessarily includes non-attorneys—is not allowed to practice in this state, rendering an attempt to do so unauthorized. This interpretation is bolstered by our supreme court's reasoning in *Bergantzel*, which presupposed a layperson is not authorized to practice law. In that case, after finding "[t]here [was] no dispute that Bergantzel was not admitted to practice law in Iowa," the court declared the "definitive issue" to be whether Bergantzel's actions amounted to the practice of law. *Id.* at 312–13. The key question was not whether a layperson could practice—the court implicitly accepted that premise when it decided whether the conduct engaged in by the layperson was the practice of law.

Moreover, Iowa Court Rule 37.2 strongly suggests that a non-attorney is not authorized to practice law by providing:

If the [C]ommission [on the Unauthorized Practice of Law] has reasonable cause to believe that any person *who has not been admitted to practice law* within this state is engaging in the practice of law ... the commission may file a verified complaint with the clerk of the district court in any county in which the *unauthorized practice* is alleged to have occurred.

Iowa Ct. R. 37.2(1) (emphasis added).[7]

Because our supreme court intended to prohibit people who are not licensed as attorneys from practicing law, an attempt to do so is unauthorized. For example, in the context of litigation by corporations, our supreme court has held that a corporation may not represent itself through non-lawyer employees, officers, or shareholders. *Hawkeye Bank & Trust, Natl. Ass'n v. Baugh*, 463 N.W.2d 22, 25 (Iowa 1990); *see also Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 721, 121 L.Ed.2d 656, 666 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal court only through licensed counsel."); *DeVilliers v. Atlas Corp.*, 360 F.2d 292, 294 (10th Cir.1966) (stating that despite the fact corporate officers are by law the agents representing the corporation, a corporation can appear in court only by an attorney).

■ Here, Yulin, who is an actuary and not an attorney, engaged in the practice of law as defined by our supreme court when

---

7. Our supreme court established the Commission on the Unauthorized Practice of Law for the purpose of "considering, investigating, and seeking the prohibition of matters pertaining to the unauthorized practice of law and the prosecution of alleged offenders." Iowa Ct. R. 38.1.

he represented Gordon's claim before the district court. *See Bergantzel*, 619 N.W.2d at 312. Yulin's conduct in representing Gordon included filing a petition and several pre-trial motions on Gordon's behalf, trying Gordon's negligence claim to a jury, presenting witnesses, introducing evidence, and filing a motion for a new trial after the jury entered its verdict. Yulin's action—namely trying a personal-injury case on behalf of his son—required the exercise of professional judgment. By engaging in this conduct, Yulin practiced law. Because Yulin is not admitted to practice law in Iowa, he engaged in the unauthorized practice of law when he represented Gordon before the district court. *See* Iowa Ct. R. 37.2(1); *Bergantzel*, 619 N.W.2d at 312–13.

We conclude, moreover, that neither Yulin's status as a pro se litigant nor as his child's next friend created an exception to the proscription against laypersons practicing law. We recognize the right of litigants to appear in our courts pro se and to litigate their own claims on their own behalf without legal representation. *See, e.g.*, Iowa Code § 236.2(7) (2009) (" 'Pro se' means a person proceeding on the person's own behalf without legal representation."); *Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 599 (Iowa 1998). Although our state law allows pro se litigants to represent their *own* claims, it does not authorize pro se litigants to prosecute the claims of *others*. Lay people cannot be said to engage in pro se representation—representing themselves—when they advocate the claims of another. *See Metz*, 581 N.W.2d at 599 n. 2 ("Metz can claim no authority to represent his wife and children who are also plaintiffs."); *see also Elustra v. Mineo*, 595 F.3d 699, 704–05 (7th Cir.2010) ("Normally, representative parties such as next friends may not conduct litigation *pro se*; pleadings may be brought before the court only by parties or their attorney.... [A] non-attorney parent may not argue on appeal *pro se* on behalf of her child.").

A parent's cause of action for loss of consortium under Iowa Rule of Civil Procedure 1.206 is distinct from the child's claim for damages arising from the personal injury. *Jones v. State Farm Mut. Auto. Ins. Co.*, 760 N.W.2d 186, 188 (Iowa 2008) (stating " '[a]ctions brought under rule [1.206] are not for the injury to the child but for the injury to the father as a consequence of the injury to the child' " (citation omitted)). Thus, Yulin was permitted to prosecute his own claim without the aid of counsel for the "expense and actual loss of services, companionship and society resulting from" the alleged injury to Gordon. *See* Iowa R. Civ. P. 1.206. But our provisions allowing his pro se representation did not authorize Yulin to prosecute Gordon's personal-injury claim; that claim belonged to Gordon. *See Galloway v. State*, 790 N.W.2d 252, 257 (Iowa 2010) (noting that generally a parent has no right to release or compromise causes of action belonging to a minor). Because the personal-injury claim belonged to Gordon, Yulin could not prosecute that claim "pro se."

Likewise, Iowa Rule of Civil Procedure 1.210, which permitted Yulin to bring suit on behalf of his son as next friend, did not authorize Yulin to advocate his son's claim before the district court without the aid of counsel. Rule 1.210 allows a parent to facilitate the child's suit. *See Wheatley v. Heideman*, 251 Iowa 695, 712, 102 N.W.2d 343, 354 (1960) (father who brought suit on behalf of two-year-old daughter was not party in interest but was "an aid to her to assert her rights, if any, against defendant"); *see also Blue v. People*, 223 Ill. App.3d 594, 165 Ill.Dec. 894, 585 N.E.2d 625, 626 (1992) ("A next friend is not a party to a suit but represents the real party, who, as a minor, lacks the capacity

to sue in his own name."). But the rule of civil procedure does not create an exception allowing a non-attorney parent to actually litigate the child's claim in court. "The authority to represent another as a party"—which rule 1.210 creates by allowing a minor to bring suit by a next friend—"does not equal the authority to practice law on their behalf." *See Chisholm v. Rueckhaus,* 124 N.M. 255, 948 P.2d 707, 709 (App.1997). Iowa Court Rule 37.2, requiring persons who practice law to be attorneys, applies with equal force to children who bring suit by a representative and is not modified by the rule of civil procedure in question

Our conclusion is consistent with the majority of jurisdictions that have encountered this argument. Those jurisdictions concluded their rules of civil procedure allowing a next friend or similar representative to bring suit on behalf of a minor did not permit the non-attorney parent to also prosecute the claim.[8] They held that non-attorney parents who bring suit on behalf of their child must be represented by counsel.

■ Further, we decline to hold the district court's power to control its proceedings included the power to "permit anyone to appear" and litigate a claim before the court "so long as [the district court] [did]

not abuse its discretion." Our district courts do not have unbounded discretion to structure the proceedings in their courtrooms. Rather, they are limited by the rules and pronouncements of our supreme court. *See Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 569 (Iowa 1976) ("After adoption of the rules of civil procedure, [our supreme] court held trial courts could not adopt and proceed according to inconsistent rules."); *Thews v. Miller,* 255 Iowa 175, 182, 121 N.W.2d 518, 522 (Iowa 1963) ("Local trial courts and the courts of each district cannot adopt and proceed according to rules which are contrary to the rules adopted by this court."). Contrary to Rizzio's contention, the district court did not have discretion to "permit anyone to appear" and to practice law before it. As a layperson, Yulin was not permitted to practice law on behalf of his minor son.

In short, Yulin engaged in the unauthorized practice of law when he tried Gordon's claims to the jury without the help of an attorney. Neither his status as a pro se litigant and next friend, nor the court's power to control its proceedings, created an exception allowing Yulin to prosecute Gordon's claims. With our conclusion, we "join an overwhelming majority of jurisdictions ... hold[ing] that a non-attorney parent must be represented by counsel in bringing an action on behalf of a child."

---

**8.** *See, e.g., Chambers v. Tibbs,* 980 So.2d 1010, 1013 (Ala.Civ.App.2007) (concluding Alabama rule of civil procedure authorizing representative to "sue in the name of the minor" did "not confer upon a representative of a minor a right to practice law on behalf of that minor"); *Byers–Watts v. Parker,* 199 Ariz. 466, 18 P.3d 1265, 1268 (App.2001) (interpreting rule of procedure in light of supreme court rule allowing only "active member[s] of the state bar" to practice law and holding non-attorney parent must be represented by attorney to maintain lawsuit on behalf of child); *J.W. v. Super. Ct.,* 17 Cal.App.4th 958, 22 Cal.Rptr.2d 527, 531–32 (1993) (concluding "neither the common law nor guardianship statutes sanction an exception to the State Bar Act prohibition against the unauthorized practice of law in favor of [representatives] acting for their wards"); *Goodwin v. Hobza,* 17 Neb.App. 353, 762 N.W.2d 623, 627 (2009) (notwithstanding statute authorizing father to bring action on child's behalf, non-attorney father may not personally litigate child's negligence action); *Chisholm,* 948 P.2d at 709 ("The district court erred in holding that a rule of civil procedure allowing a child's representative to sue or defend on the child's behalf constitutes an exception to the general prohibition against unauthorized practice of law.").

*Chisholm,* 948 P.2d at 709; *see also Elustra,* 595 F.3d at 705 ("To our knowledge, no comparable exception [allowing a parent to represent their child] has ever been recognized for a lawsuit based on ... general state tort law."); *Osei–Afriyie v. Med. Coll. of Pa.,* 937 F.2d 876, 882 (3d Cir.1991) ("[W]e hold that [father], a non-lawyer appearing pro se, was not entitled to play the role of attorney for his children in federal court."); *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986) ("We hold that under Fed[eral] R[ule][of] Civ[il] Pro[cedure] 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."); *Chambers,* 980 So.2d at 1015 (holding "nonattorney parents of the child ... may not represent the child in her action against the defendants"); *Byers–Watts,* 18 P.3d at 1269 ("We hold that a non-attorney parent or like fiduciary must be represented by an attorney to maintain a lawsuit on behalf of a child."); *J.W.,* 22 Cal.Rptr.2d at 532 (concluding neither common law nor guardianship statute allowed non-attorney parent to litigate child's claim); *Blue,* 165 Ill.Dec. 894, 585 N.E.2d at 626 (stating non-attorney father was "at most the 'next friend' of the minor plaintiff" and concluding father could not represent the child); *Goodwin,* 762 N.W.2d at 627 (holding non-attorney parent may not personally litigate child's negligence claim).

We are especially persuaded by the rationale offered by the Nebraska court of appeals for its conclusion that a parent who is not an attorney should be barred from personally litigating a child's negligence action:

> The rule "helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." It is not in a child's best interests to be represented by a nonattorney.

*Goodwin,* 762 N.W.2d at 627 (citations omitted).

### 4. Remedy

Having determined Yulin engaged in the unauthorized practice of law when representing the interests of his son, we set aside as void the judgment on Gordon's claims. We disagree with Rizzio's argument that our supreme court's decision in *Bump v. Barnett* forecloses such a remedy.[9] *See Bump v. Barnett,* 235 Iowa 308, 16 N.W.2d 579 (1944).

*Bump* involved a party seeking an injunction to prohibit a non-lawyer collection agent from continuing to engage in the unauthorized practice of law. *Id.* at 310–11, 16 N.W.2d at 581–82. Importantly, the judgments referenced by the court in *Bump* did not arise in the injunction case before it; rather, they were obtained in earlier, distinct proceedings. To the extent the court addressed the validity of judgments procured through the unauthorized practice of law, it concluded only that it would not declare void, in a collateral attack, judgments entered in entirely separate proceedings. *Id.* at 316, 16 N.W.2d at 584 ("We do not have the judgments before us and do not know what form or forms they may have taken."). That is, the court declined to allow a party to collaterally attack judgments obtained in entirely distinct proceedings. *Bump* did not address a direct attack on the validity of the judgments procured through the unauthorized practice of law and it did not hold parties could not directly attack the validity of such judgments. Because the

9. Rizzio alleged in her brief that in *Bump,* the court concluded that a "finding of unauthorized practice of law has no effect on the validity of judgment rendered before the unauthorized practice was enjoined."

judgments referenced in *Bump* as neither void nor voidable were not obtained in the injunctive action being decided in that case, we conclude *Bump* is not binding as to the remedy in the case before us today, which involves a direct attack upon a judgment.

The case we decide today involves a direct appeal from the district court's post-trial ruling upon the validity of a judgment obtained through the unauthorized practice of law. We conclude the proper remedy is to void the adverse judgment with respect to Gordon's claim. No other remedy would provide Gordon any meaningful benefit.

Our decision is supported by persuasive authority from other jurisdictions addressing this same issue. *See, e.g., Elustra,* 595 F.3d at 706 (observing that "[m]any of the cases that reject parents' pleadings filed pro se on behalf of their children acknowledge that the appropriate remedy is to allow the child to re-litigate the case with counsel"); *Osei–Afriyie,* 937 F.2d at 882–84 (vacating an adverse judgment on children's claims, which had been unsuccessfully tried before a jury by the children's non-attorney father); *Blue,* 165 Ill.Dec. 894, 585 N.E.2d at 626 (dismissing the appeal and declaring the proceedings in the district court void because a non-lawyer father "may not represent" the child in court); *Goodwin,* 762 N.W.2d at 628 (affirming the district court's dismissal of a suit filed by a non-lawyer father on behalf of his minor child and declaring "[p]roceedings in a suit by a person not entitled to practice law are a nullity").

Because we conclude Yulin's unauthorized practice of law itself renders the judgment in this case void, we do not reach the personal jurisdiction and due process arguments asserted. *See State v. Seering,* 701 N.W.2d 655, 663 (Iowa 2005) (recognizing a duty to "avoid constitutional questions not necessary to the resolution of an appeal").

Moreover, we do not share the concerns the district court expressed regarding other areas of law that might be affected by a prohibition on non-attorney parents litigating their children's claims. The court feared that if it

> void[ed] the judgment in this case, it could put in peril other judgments entered in name changes, domestic abuse protective orders, and other civil matters where a parent has appeared pro se when filing an action as next friend for their minor children.

Those concerns are assuaged by statutes that specifically allow parents to proceed on behalf of their children's interests without the aid of counsel. For example, Iowa Code section 236.3(1) allows parents to proceed pro se on behalf of their children when seeking relief from domestic violence.[10] Likewise, Iowa Code section 674.1 provides "a parent may file a verified petition requesting a name change on behalf of a minor child of the parent." Where the legislature anticipated the need for parents to act expeditiously on the behalf of their children in limited legal actions, it provided a specific provision allowing non-attorney parents to proceed on behalf of their children.

**B. Yulin's Argument: Grant a New Trial on the Grounds the Verdict was Not Sustained by Sufficient Evidence or Law**

**1. Standard of Review**

" 'The scope of our review of a district court's ruling on a motion for new trial

---

**10.** Iowa Code section 236.3(1) provides that "[a] person, including a parent or guardian on behalf of an unemancipated minor, may seek relief from domestic abuse by filing a verified petition in the district court."

depends on the grounds raised in the motion.'" *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006) (citation omitted). If the motion for a new trial was based on discretionary grounds, we review the district court's decision for an abuse of discretion. *Id.* In contrast, if the motion for new trial was based on a legal question, we review for the correction of errors at law. *Id.*

In his motion for a new trial, Yulin asserted he was "entitled to a new trial because '[t]he verdict ... [w]as not sustained by sufficient evidence, or [w]as contrary to law.'" "Because the sufficiency of the evidence presents a legal question, we review the trial court's ruling on this ground for the correction of errors of law." *Estate of Hagedorn ex rel. v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004).

### 2. Merits

Yulin contends both he and Gordon are entitled to a new trial on their claims because there was insufficient evidence to support the jury's verdict finding Rizzio was not negligent. We begin by noting Yulin's argument encompasses two distinct allegations: (1) Gordon is entitled to a new trial on his personal injury claim, and (2) Yulin is entitled to a new trial on his loss-of-consortium claim. We bifurcate our analysis, addressing the argument as it pertains to Gordon's personal-injury claim first and as it pertains to Yulin's loss-of-consortium claim second. *See generally Osei–Afriyie*, 937 F.2d 876 (addressing the father's and children's claims separately).

■ We dismiss the portion of the appeal that argues for a new trial on Gordon's behalf. Because the judgment on Gordon's personal injury claim is void, "there [is] no valid judgment from which to appeal" and, consequently, we have no action to review with respect to this claim. *Wederath v. Brant*, 287 N.W.2d 591, 595 (Iowa 1980). We decline to entertain an argument on appeal from a void judgment. *Id.* (stating that "in retrospect it was unfortunate that we did not dismiss the appeal because there was no valid judgment from which to appeal").

■ We also reject Yulin's argument for a new trial on his consortium claim. Although Yulin's brief submitted to this court focused on the sufficiency of the evidence to support the jury's no-negligence finding, he clarified at oral argument that with the negligence argument, he appealed both his son's personal-injury claim and his consortium claim. Because the negligence issue was crucial to both the child's personal-injury claim and Yulin's consortium claim, we are persuaded that Yulin's contentions on the negligence issue effectively raised and preserved his consortium claim.

Moreover, our supreme court has "specifically refused to make joinder [of a consortium claim with the injured person's claim] mandatory." *Christy v. Miulli*, 692 N.W.2d 694, 706 (Iowa 2005); *see also Craig v. IMT Ins. Co.*, 407 N.W.2d 584, 586 (Iowa 1987) (stating "[l]oss of consortium is an independent and distinct cause of action wholly separate from any cause of action otherwise available to the child itself" and illustrating the "distinct and wholly independent nature of the parents' action" with prior "holdings [that] bar a wrongful death claim on behalf of an unborn child while at the same time allowing the parents of an unborn child to recover for loss of consortium"). Rather, "[j]oinder is not required when it is not feasible." *Christy*, 692 N.W.2d at 706. Because joinder rules do not per se preclude asserting a consortium claim separate from the injured person's claim, and because the district court ruled on the issue, we reach the merits.

■ We do not believe that the district court erred in declining to grant a new trial on Yulin's consortium claim. Here, as the district court pointed out, Yulin had the burden to prove Rizzio's negligence and the "jury answered 'no' to the question, 'Was Joni Rizzio negligent?'" The jury's decision demonstrates that in performing its fact-finding functions it determined Yulin failed to carry his burden by offering sufficient credible evidence that Rizzio was negligent. *Meirick by Meirick v. Weinmeister*, 461 N.W.2d 348, 350 (Iowa Ct.App.1990) (stating the jury's verdict indicated "appellants failed to carry their burden of proof to the satisfaction of the jury"). It was the responsibility of the jury to make this determination and the district court properly declined to set aside the verdict in favor of granting a new trial. *Neumann v. Serv. Parts Headquarters*, 572 N.W.2d 175, 177 (Iowa Ct.App.1997) ("It is not for the courts to invade the province of the jury.").

Further, "only in exceptional cases" may we decide issues of negligence and proximate cause as a matter of law. Iowa R.App. P. 6.904(3)(j); *City of Cedar Falls v. Cedar Falls Comty. Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000). To the extent Yulin's argument, asserting Rizzio "was negligent under any theory provided in court," contends reasonable minds could come to no other conclusion than that the defendant was negligent as a matter of law, we disagree. While Yulin is able to point to evidence supporting his position, so too can Rizzio. *See Meirick*, 461 N.W.2d at 350 ("[W]e cannot say, in view of the conflicting testimony, that the burden was so strong, so overwhelming, as to compel a finding of negligence as a matter of law."); *Hines v. Chi., Milwaukee & St. Paul Ry. Co.*, 196 Iowa 109, 116, 194 N.W. 188, 191 (1923). The district court thus did not err in denying Yulin's motion for a new trial on his consortium claim.

### C. Yulin's Argument: Grant New Trial on the Grounds of Irregularity During the Proceedings

■ Rizzio argues Yulin did not preserve error on his argument that he and Gordon are entitled to a new trial on their claims as a consequence of the district court's failure to appoint a guardian ad litem for Gordon. She contends Iowa Rule of Civil Procedure 1.1007 requires a party to file a motion for new trial within ten days of the verdict and allows a court, in its discretion, to extend that time to thirty days from the date of the judgment, but not more. She alleges that "[a]fter those deadlines, the post trial issues are fixed" and, although an amendment filed more than thirty days from the date of the judgment may refine or narrow the claims, it may not raise new issues.

Iowa Rule of Civil Procedure 1.1007 requires an aggrieved party to file a motion for a new trial "within ten days after filing of the verdict ... unless the court ... grants additional time not to exceed 30 days." An amendment to a new-trial motion is filed too late if it is filed more than thirty days after the verdict. *Julian v. City of Cedar Rapids*, 271 N.W.2d 707, 708 (Iowa 1978) (reversing the grant of a new trial because the party "filed her amendment containing the ground in question 33 days after the verdict, which was too late"). "A late-filed amendment to a new-trial motion cannot be considered unless the ground asserted is germane to a ground in the original timely motion." *Id.*

We agree with Rizzio and conclude the issue was not properly preserved because it was not brought before the district court within the extended thirty-day time frame. Here, the jury returned its verdict on November 19, 2009, which was filed November 20, 2009. Although Yulin timely filed

a motion for a new trial on November 30, 2009, he did not assert that he and Gordon were entitled to a new trial as a consequence of the district court's failure to appoint a guardian ad litem on Gordon's behalf. Rather, he limited his argument to three claims: the court should grant a new trial because (1) he discovered new evidence; (2) neither substantial evidence nor law supported the verdict; and (3) "substantial justice was not effectuated."

The claim now before us was raised for the first time in an amended motion on February 22, 2010, more than thirty days from the date of the verdict. Consequently, the issue was raised too late. Further, we do not believe this ground is germane to any of those initially asserted in Yulin's original, timely motion. Accordingly, we decline to address the argument. Moreover, our conclusion on the GAL's argument regarding the unauthorized practice of law by Gordon's father as a practical matter addresses Yulin's concern that the proceedings were irregular as to Gordon's own claims.

In sum, we void the adverse judgment on Gordon's personal-injury claim because Yulin engaged in the unauthorized practice of law in representing his son. We affirm the district court's denial of a new trial to Yulin on his loss-of-consortium claim and dismiss Yulin's claim for a new trial on behalf of Gordon.

**AFFIRMED IN PART, REVERSED AND DISMISSED IN PART.**