**J.M. GRIMSTAD, INC., Plaintiff–Appellant,**

v.

**SCANGRAPHICS, INC., Defendant–Appellee.**

**No. 5–170/94–1025.**

Court of Appeals of Iowa.

Sept. 22, 1995.

William G. Nicholson of White & Johnson, P.C., Cedar Rapids, for appellant.

R. James Sheerer of Correll & Sheerer, Cedar Falls, for appellee.

Considered by SACKETT, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

The plaintiff, J.M. Grimstad, Inc., rented one-half of a commercial building in Cedar Falls to the defendant, ScanGraphics, Inc., under a five-year written lease commencing on October 1, 1985. The lease contained a provision requiring any assignment of the lease or subletting to be approved by Grimstad but that such consent would not be unreasonably withheld. In August 1987, ScanGraphics relocated its business to Des Moines. ScanGraphics met with Grimstad and expressed an interest in continuing to meet its monthly rental obligations while it looked for an assignee or sublessee. Both parties agreed to make efforts in locating an appropriate assignee or sublessee.

In 1988, ScanGraphics made an offer to buy out the lease for $14,000. Grimstad rejected the proposal in a letter dated January 11, 1989, which indicated Grimstad would keep aggressively marketing the property and would inform ScanGraphics of any progress.

In July 1989, the Don E. Williams Company expressed an interest in renting the property as a tool storage facility. Representatives of the Williams company visited the property and were shown around the property by Bill Olson, a local manager for Grimstad. Williams' representatives visited the property a second time in the following month. Olson again conducted a tour of the property, answered questions, and preliminarily negotiated with Williams. Grimstad and ScanGraphics are in dispute on whether Williams was seriously interested in the property. At no time during the visit did Grimstad notify ScanGraphics of Williams' interest in the property or encourage Williams to contact ScanGraphics. Williams subsequently rented another building in the area.

A few months later, ScanGraphics learned of the Williams company's interest in the property. Subsequently, ScanGraphics noti-

fied Grimstad the rental payments were being terminated because Grimstad breached its duty to ScanGraphics. ScanGraphics also sought a refund of the rent paid in August and September 1989.

Grimstad then commenced an action to recover damages for unpaid rent. ScanGraphics counterclaimed for recovery of the rent payments made in August and September 1989. The case proceeded to a non-jury trial on May 8, 1991. The judgment entered was reversed by the court of appeals in a decision filed on February 2, 1993.

On remand, a new trial was held. On May 25, 1994, the district court entered a ruling denying both Grimstad's claim for unpaid rent and ScanGraphics' counterclaim. The district court determined that under the facts of the case, particularly the lease and the January 1989 letter, Grimstad's duty to use due diligence in trying to relet the property included a requirement to notify ScanGraphics of the Williams company's interest in the property and to encourage Williams to contact ScanGraphics for negotiations.

Grimstad appeals.

Our scope of review is limited to the correction of errors at law. Iowa R.App.P. 4. We are bound by the trial court's findings of fact if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We are not, however, bound by the trial court's determinations of law.

While Grimstad presents five issues on appeal, we believe these issues are merely sub-issues of the central question on appeal: Did Grimstad exercise due diligence in trying to find a new tenant?

The parties in this case agree on much. Among other things, there is agreement ScanGraphics was subject to a five-year lease; ScanGraphics decided to move out of the leased premises with three years remaining on the lease; the parties agreed that both would try to find a new tenant; the demand in the commercial rental market in Cedar Falls during this time was very low; and ScanGraphics was able to locate a subtenant for a six-month to eight-month period,

otherwise the property remained vacant during the remainder of the lease. The parties, however, agree on very little regarding the Williams firm as a prospective tenant.

■■■■ When a tenant abandons leased premises prior to the termination of the lease, the landlord has a duty to mitigate damages by using reasonable diligence to relet the property at the best obtainable rent. *Vawter v. McKissick,* 159 N.W.2d 538, 541 (Iowa 1968); *Harmsen v. Dr. Mac-Donald's, Inc.,* 403 N.W.2d 48, 51 (Iowa App. 1987). This duty does not arise until the lessor has reason to know of the abandonment. *Id.* The burden is on the lessor to show due diligence and the lessor is not required to adopt any specific method in attempting to relet the premises.[1] *Harmsen,* 403 N.W.2d at 51.

Grimstad made at least two representations which are apparent in the record that they would aid ScanGraphics in finding a new tenant. When ScanGraphics initially notified Grimstad of their intentions, the parties both agreed to make efforts in finding a new tenant. The second representation was in the January 1989 letter where Grimstad made the following strong promise:

> I believe a more equitable arrangement is for ScanGraphics to continue the lease agreement and J.M. Grimstad will more aggressively market the property. Upon a successful search we can then again discuss the termination of the lease.
>
> I will keep you informed of any significant progress.

The question before us is whether there is substantial evidence to support the trial court's decision that Grimstad did not meet its burden of proof in showing reasonable diligence in reletting the property. The trial court found the issue in the following manner:

> The critical issue in this case is whether or not the landlord carried its burden to prove that it used due diligence in trying to re-let the property. Specifically, did that duty of due diligence *under the facts*

---

1. In this particular case, the tenant vacated the premises but continued to pay rent under an agreement with the landlord that both parties would attempt to find an assignee.

*of this case* require the landlord to notify tenant of the Williams prospect, or encourage the Williams firm to contact the tenant for negotiations?  (Emphasis supplied).

Grimstad had the burden of proof on the duty to mitigate. *Harmsen*, 403 N.W.2d at 51.  As we previously stated, findings of fact in the law action heard by the court are binding upon the appellate court if supported by substantial evidence.  Iowa R.App.P. 14(f)(1).  In addition, findings by the trial court on credibility of witnesses are entitled to substantial weight. *Jorgensen v. Allied Mut. Casualty Co.*, 232 Iowa 156, 5 N.W.2d 167 (1942).

Reasonable diligence may require more out of a landlord in some situations than in others.  The parties in this particular case were faced with a vacant building in a very tough rental market.  Other than the brief sublease, there was little to no interest shown in the property prior to the Williams inquiry.

The district court properly acknowledged the efforts Grimstad made in trying to find a tenant.  A "For Rent" sign was placed on the front of the building.  Both parties notified acquaintances in the business community regarding the rental.  Organizations active in the promotion of locating new businesses were advised of the availability of the property.

The parties dispute the level of interest Williams expressed in the property.  However, there is substantial evidence in the record to support the trial court's ruling that Williams was indeed a serious prospect and that reasonable diligence, under the facts of this case, required Grimstad to take some affirmative steps to procure Williams as a tenant.  The mere fact that Williams made two visits to the property and asked numerous questions on the second visit during a time where the demand for commercial rental property was low indicates strong efforts should have been made in an attempt to gain Williams as a new tenant.  Under these circumstances, Grimstad had to do more than sit and wait for Williams to make more inquiries.  We do not rule on whether Grimstad was required to contact Williams directly as a follow-up to their visit or whether Grimstad was required to contact ScanGraphics regarding Williams' interest.  Rather, we hold the situation required Grimstad to do something more than sit by passively and not take an active role in the process.

Upon consideration of all issues brought before us, we conclude there is substantial evidence in the record to support the trial court's findings that Grimstad did not exercise reasonable diligence in this situation.  Accordingly, we affirm the decision of the district court.

**AFFIRMED.**