**IN THE COURT OF APPEALS OF IOWA**

No. 21-1367
Filed June 15, 2022

**DANIEL REEVES and JOY REEVES,**
        Plaintiffs-Appellees,

**vs.**

**NILSON MEDEIROS and CRYSTAL SAVAGE,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Story County, Jennifer Miller, Judge.

        Tenants appeal from the denial of their motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for a new trial. **AFFIRMED.**

        Colin Murphy of Gourley Rehkemper Lindholm, P.L.C., West Des Moines, for appellants.

        Chad E. Schneider of Hastings, Gartin & Boettger, LLP, Ames, for appellees.

        Considered by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Nilson Medeiros and Crystal Savage (the tenants) rented a house in Ames from Daniel and Joy Reeves (the owners)[1] but found themselves moving into a dispute rather than a home. After a disagreement about pets led to the tenants vacating the property, the owners spent seven months finding a new tenant; all the while, unpaid rent was accruing for Medeiros and Savage. The owners sued the tenants to collect that lost rent, and the jury found in the owners' favor. The tenants moved for both a judgment notwithstanding the verdict (JNOV) and a new trial. The district court denied both motions. Because the owners provided sufficient evidence they mitigated their damages and the jury's award was not premised on passion or prejudice, we affirm the verdict.

**Facts and Background Proceedings.**

In the beginning of June 2017, the tenants contacted the property manager employed by the owners about the Ames property after seeing the home on a Zillow[2] listing. In gathering information, the property manager asked who would be living in the house and if they had any pets. Medeiros answered that he, Savage, and their three sons would be moving in; he never mentioned pets. The property manager and Medeiros toured the location before agreeing to sign the lease, with the lease term beginning July 15, 2017, and ending on July 31, 2018. Important for this appeal, the lease included provisions (1) not allowing pets unless necessary for a medical condition or disability and (2) asserting that, were the

---

[1] We use this term to also include the property management company personnel who also acted on behalf of the Reeves.
[2] Zillow is a website that allows individuals to post and browse properties for rent and sale.

lease to be terminated before the end of the lease term, the tenants were responsible for monthly rent until the property was re-leased. There was also a page attached to the lease, requiring no additional signature, which laid out various administrative charges such as a "bounced check fee," a delivery fee if the owners needed to provide the tenants notice, and a fine for unapproved pets. Under the lease, the prorated rent for July 2017 was $825, and monthly rent was $1650. The security deposit of $1650 was paid upon execution of the lease.

Medeiros also asked that the carpet in the master bedroom be removed because the previous owner had a pet in the home[3] and he reported Savage was "very allergic." The owners removed the carpet as requested and put down new flooring.

The tenants moved in on July 17. The property manager reached out to the tenants to ensure they had received the link to pay rent through an online portal but got no response. The next day, the property manager received a message from Medeiros that the boys found scorpions in their room and there were ants in the closets. The property manager responded that it would be unlikely to find scorpions in Iowa but contacted the owners, who scheduled pest control. When the owners arrived with pest control, they were surprised to see the sons pull into the home's driveway with two dogs in their car. When asked, the sons said the dogs were theirs. The owners called the property manager, who contacted the tenants. At the same time, the property manager asked again about the unpaid

---

[3] At the jury trial, the owners explained that they preferred to lease the home to tenants without pets, but had never declined a potential tenant's advance request to have either a medically-necessary animal or a pet.

rent. The tenants explained one dog was their daughter's, while the other was theirs; but, if the dog was an issue, it could live with their daughter as well. They also conveyed that they were struggling to get wireless internet and television services established in the home and were experiencing electrical trouble. The owners aimed to remedy the concerns. Still, the tenants asked for a discount in the July rent price—the owners did not oblige.

The owners returned on August 1 to pick up some dehumidifiers they had left for the tenants to use. When they arrived, the two dogs were again in the home. The property manager reached out to the tenants, and they informed her— for the first time—that one of the animals was an emotional support animal (ESA). If that dog could stay, the tenants reasoned, they would pay the rent for both July and August that day. The property manager expressed doubt about the dog's status as an ESA and reminded the tenants that rent was "not negotiable." The owners and property manager began debating their next steps, but the next day, the tenants sent a text message to the owners telling them they were moving out. Even so, the property manager drafted and delivered notices to the tenants giving three days to pay rent and seven days to remedy the unauthorized pet issue— either by moving the pet out of the home or providing the appropriate paperwork to verify the dog was an ESA.

The tenants moved out completely by August 4. The property manager posted the property again on a variety of listing websites and showed the house a few times. The owners also told people in Ames that the property was for rent.

But in part because of the university-centric rental schedule,[4] it took until March to find a new tenant. Each month, the property manager sent the tenants a statement of charges accrued in damages to the property, administrative charges, rent, and late payment fees—by March, this totaled $14,422.02.

After vacating the premises, the tenants filed a complaint with the Iowa Civil Rights Commission (ICRC) claiming discrimination on the basis of disability. But, following the ICRC's investigation, an administrative law judge dismissed the charges, finding lack of probable cause that the tenants were discriminated against based on disability.

In November 2018, the owners filed a six-count lawsuit to recover the total from the final statement, as well as the cost of utilities, snow removal,[5] legal fees, and court costs. In response, the tenants argued the owners failed to mitigate their damages.

When the case went to a jury in June 2021, the tenants moved for a directed verdict, which the district court granted in part. This left two claims[6] for consideration by the jury: (1) breach of contract and (2) misrepresentation and fraud. The tenants did not present any evidence in their case in chief. While deliberating, the jury asked if it should consider punitive damages for

---

[4] As the property manager explained at the jury trial, because Ames is home to Iowa State University, for the "real heavy rental season, turnover is July 31 to August 1st. It's one of the only towns that really revolve around the university. If you don't hit that mark, you're—you can sit on a house for a while."

[5] Snow removal would have been the responsibility of the tenants according to the lease.

[6] The dismissed counts included (1) frivolous claim, (2) abuse of process, (3) malicious prosecution, and (4) defamation—all relating to the tenants' claim of disability discrimination against the owners.

misrepresentation and fraud beyond the damages sought for the breach of contract; the court responded the owners had sought only actual damages, not punitive damages. Upon the jury's return, it found the tenants liable for both counts and awarded $25,277.92 to the owners for the breach-of-contract claim—the total from the final statement and the owners' legal costs, which were shown by an itemized accounting entered as an exhibit. The jury specifically found the owners mitigated their damages and awarded no damages for the fraud claim.

Two weeks after the verdict, the tenants moved for JNOV and a new trial. In their motion for JNOV, the tenants argued the jury incorrectly determined the owners mitigated their damages. In their motion for a new trial, the tenants urged both that the verdict was not supported by substantial evidence the owners mitigated their damages and that the damages were based on the jury's prejudice against the tenants. Following a hearing, the district court denied both motions. The tenants now appeal the court's holdings on both motions.

**Discussion.**

*A. Motion for JNOV.*

We review a ruling on a JNOV motion for correction of errors at law. *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 431 (Iowa 2019). We consider whether a fact question was generated to justify sending the case to the jury; this requires there to have been substantial evidence supporting each element of the plaintiffs' claim. *Zaw v. Birusingh*, ___ N.W.2d ___, ___, 2021 WL 5458049, at *12 (Iowa 2021). "[E]vidence is substantial if 'reasonable minds would accept the evidence as adequate to reach the same findings.'" *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 18 (Iowa 2014) (citation omitted). "We, like the district

court, view the evidence in the light most favorable to the party against whom the motion is intended, the nonmoving party." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

The crux of the tenants' JNOV motion was whether the owners took reasonable steps to mitigate their damages. "When a tenant abandons leased premises prior to the termination of the lease, the landlord has a duty to mitigate damages by using reasonable diligence to relet the property at the best obtainable rent." *J.M. Grimstad, Inc. v. Scangraphics, Inc.*, 539 N.W.2d 732, 734 (Iowa Ct. App. 1995). There is no preordained method of finding a new tenant that satisfies this duty; the lessor has the burden of proof to show they exercised reasonable diligence to find a new tenant for the property. *Id.*; *Harmsen v. Dr. MacDonalds, Inc.*, 403 N.W.2d 48, 51 (Iowa Ct. App. 1987). Here, the jury was instructed:

> When a tenant abandons leased premises prior to the termination of the lease, the landlord has a duty to mitigate damages by using reasonable diligence to relet the property at the best obtainable rent.
> This duty does not arise until the lessor has reason to know of the abandonment.
> The burden is on the landlord to show reasonable diligence and the landlord is not required to adopt any specific method in attempting to relet the premises.
> Reasonable diligence may require more out of a landlord in some situations than in others.

In describing the efforts made, the property manager confirmed use of the same property management software and use of several online rental services—just as had been done prior to the execution of the tenants' lease. As for the listing efforts, the district court noted, "The property was immediately listed on internet listing sites which could conceivably reach 1000s of people per day. It is unclear

what additional steps could have been taken to reach more people to rent the property."

The tenants argue that, because the rental market in Ames can be challenging after August 1, simply relisting the property online was insufficient. Instead, reasonable diligence would have required the owners to better market the property, including running advertisements in the newspaper, social-media advertisements, offering a reduced rent, holding open houses, or posting signs in front of the property. As support, they cite *J.M. Grimstad, Inc.*, 539 N.W.2d at 735, a 1995 Iowa Court of Appeals case in which, given a tough rental market, merely putting up a "For Rent" sign and telling friends about the listing of a commercial property was not enough to mitigate damages. But there are important distinctions to draw between *Grimstad* and the present case. In *Grimstad*, the commercial tenant had vacated the premises in 1987 and it had still not been relet by 1989, when someone expressed interest. The court in *Grimstad* stated that the landlord should have done more to hook the potential tenant given how long the building had remained empty. Here, the property had multiple interested parties in the seven months it sat vacant from August to March, and the property manager took the time to show the property when parties were interested. And the owners were not relying on just word-of-mouth advertising, but instead on postings on five separate websites that had been their typical mode of finding tenants. *Grimstad* does not drive us to find that the owners here did not exercise reasonable diligence in finding a new tenant.

The owners provided evidence of steps they took to relet the property, generating a question of fact about if they exercised the required reasonable

diligence. The district court, then, was justified in sending the question to the jury, which specifically determined the owners had mitigated their damages.

*B. Motion for a New Trial.*

The tenants also appeal the district court's denial of their motion for a new trial. We review a motion for a new trial differently depending on the grounds alleged. *Whitlow v. McConnaha*, 935 N.W.2d 565, 569 (Iowa 2019). When the motion was based on a claim that the jury's award of damages was excessive, our review is for abuse of discretion. *WSH Props., L.L.C. v. Daniels*, 761 N.W.2d 45, 49 (Iowa 2008). "An abuse of discretion occurs when the court's decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree." *Id.* When it questions whether there was sufficient evidence, our review is for correction of errors of law. *Yulin Li ex rel. Lee v. Rizzio*, 801 N.W.2d 351, 364 (Iowa Ct. App. 2011). "Generally, we are reluctant to interfere with a jury verdict and give considerable deference to a trial court's decision not to grant a new trial." *Whitlow*, 935 N.W.2d at 569 (citation omitted).

The tenants' motion for a new trial addressed the insufficiency of the evidence over the mitigation-of-damages issue. As we have already determined there was sufficient evidence for the jury to determine, as the fact finder, that the owners mitigated their damages, we need only concern ourselves with the tenants' second argument: the verdict amount is excessive because of the jury's passion or prejudice.

A district court can grant a motion for a new trial because of excessive damages awarded based on the jury's passion or prejudice. Iowa R. Civ.

P. 1.1004(4). "The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. Certainly where the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question." *Mazur v. Grantham*, 125 N.W.2d 807, 814 (Iowa 1964). "A verdict should not be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice, or undue influence." *Allen v. Lindeman*, 148 N.W.2d 610, 619 (Iowa 1967) (citation omitted). "In considering the contention the verdict is so excessive as to . . . show it is the result of passion and prejudice we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear." *WSH Props.*, 761 N.W.2d at 50 (citations omitted).

Pointing to the jury's question about punitive damages, the tenants argue the verdict was based not on actual damages but on anger towards the tenants. Yet, the owners listed damages of $29,338.41 in an exhibit detailing their losses. Because the verdict was supported and within the range of the evidence presented, we do not find the verdict was excessive after reviewing the record. The damages awarded correlate with the final statement of unpaid rent and administrative costs along with reasonable legal costs incurred by the owners to recover that money. No other damages were awarded based on the fraud and misrepresentation claim; the jury was explicitly informed that the plaintiffs had sought only actual damages, which is what they were awarded based on evidence in the record. The damages were not flagrantly excessive and we find no presumption that prejudice or passion influenced the jury's determination. So we will not disturb the award. *See Gray v. Hohenshell*, No. 17-1100, 2019 WL 325015,

at *6 (Iowa Ct. App. Jan. 23, 2019) ("True, the jury was presented with argument and testimony that may have been intended to invoke its passions and prejudices, but we find nothing in the record that affirmatively establishes the jury's predisposition that it could impartially consider the evidence gave way to improper considerations in reaching the verdict."). In short, the verdict was supported by the evidence.

**Conclusion.**

As the owners provided sufficient evidence to show they mitigated their damages and the jury's award of damages has evidentiary support in the record, we affirm the district court's denial of the tenants' motions for JNOV and a new trial.

**AFFIRMED.**