# IN THE COURT OF APPEALS OF IOWA

No. 22-2066
Filed December 6, 2023

**IN THE MATTER OF PROPERTY SEIZED FROM DAVID RAY BROOKS,**

**STATE OF IOWA,**
        Respondent-Appellant,

**vs.**

**PAULA HANSEN,**
        Claimant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin (motion to set aside in rem judgment) and Coleman McAllister (order on disposition of seized property), Judges.

The State appeals the district court's order setting aside a forfeiture judgment. **APPEAL DISMISSED.**

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellant.

David Shinkle, Des Moines, for appellee.

Heard by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

While executing a search warrant, police discovered over $41,000 in cash stashed inside a safe. Was it proceeds from David Brooks's marijuana dealing or generous tips that his mother received working as a restaurant server? The district court found the State failed to offer clear and convincing evidence that it was the former, accepted that it was the latter, and ordered the State to return the cash to Paula Hansen. The State appeals that order, but not on its merits. Rather, the State limits its challenge to the timeliness of Hansen's motion to set aside the original in rem forfeiture judgment. At oral argument, the State asked: "How late is too late" for an alleged interest holder to contest a forfeiture order?

But Hansen raises a threshold question of timing. She contends we lack jurisdiction because the State's appeal was too late. The State waited nearly one year to challenge the order setting aside the forfeiture judgment.[1] The State argues that order was "not itself appealable." We disagree. Because the order setting aside the in rem forfeiture judgment was a final order, the State had thirty days to appeal. Iowa R. App. P. 6.101(1)(b). Instead, the State filed an amended in rem forfeiture complaint under Iowa Code chapter 809A (2022) and proceeded to a hearing on the merits.

The notice of appeal following the second forfeiture order was an untimely challenge to the order setting aside the first forfeiture order. So we lack jurisdiction and must dismiss.

---

[1] Hansen also argues that the State cannot resurrect the first in rem judgment to defeat her title to the money after litigation on the merits. We do not reach that argument.

## I. Facts and Prior Proceedings

*Seizure of Property.* In November 2018, a postal inspector contacted the Mid-Iowa Narcotics Enforcement task force about suspicious packages being delivered to David Brooks.[2] The task force obtained a search warrant for the house that Brooks shared with his mother, Paula Hansen.[3] Executing the warrant in Brooks's bedroom, officers found a digital scale, loose marijuana, vape cartridges containing THC, more than $1000 in cash, a loaded handgun, and ammunition. In his closet they found two safes. The larger safe contained hundreds of vape cartridges and a pound of marijuana. The smaller safe contained $41,942 in cash, unused vape pens, narcotics, and Brooks's birth certificate. The cash in the smaller safe is the subject of this appeal.

Officers seized all the contraband and property they suspected was connected to Brooks's criminal activity, including the handgun and a total of $43,877 in cash. Hansen and Brooks were present when officers executed the search warrant. According to task force detective Ryan Howe, Brooks "claimed everything in the safes located in the closet and in his bedroom, all of the contents were his." Howe recalled that Hansen didn't claim ownership of anything from Brooks's bedroom.

*Original Forfeiture Action.* The same day as the search, Detective Howe filed a notice of seizure for forfeiture, listing Brooks as the only claimant. In December 2018, the State filed an in rem forfeiture complaint alleging the property

---

[2] Upon opening the packages, the inspector discovered roughly thirty pounds of products containing THC, the active ingredient in marijuana.

[3] Hansen and her boyfriend had a bedroom in the basement.

was subject to forfeiture under Iowa Code chapter 809A.8(1)(a) (2018). The State tried to serve Brooks with the complaint by certified mail. Unsuccessful, the State served the complaint by publication in January 2019.

In February 2019, the State applied for an order to forfeit the $43,877 in cash and the handgun valued at $100. The application noted that after proper service of the in rem complaint, no claim or answer were on file with the court. The State also certified that there were "no known additional interest holders" beyond Brooks. Detective Howe filed an affidavit stating that the property was either used or intended to be used to facilitate the commission of a crime. On March 1, the court entered an order for forfeiture of the cash and handgun and transfer of title to the State.

*Hansen's Challenge*. In August 2021—two and one-half years after the court's forfeiture order—Hansen sought the return of the seized property under Iowa Code chapter 809. She claimed the cash seized from the small safe belonged to her and "was earned by her through gainful employment over a period of years." She also alleged that she was never served with notice of the State's intent to forfeit this cash. The State resisted the application—asserting Hansen had "actual notice of the seizure."[4] The State insisted that her application was time-barred and moved to dismiss.

In the meantime, Hansen sought discovery, which the court allowed. But in October the State asked the court to reconsider and renewed its request to

---

[4] In resisting Hansen's motion for return of seized property, the prosecuting attorney also claimed that the publication notice was served upon "David Brooks, *and any otherwise interested parties.*" But the published notice in our record is directed only "To: David R. Brooks."

dismiss, arguing: "Property seized for forfeiture, in fact, actually forfeited and subject to final judgment, is not subject to the provisions of chapter 809."

*Court Proceedings.* In late November 2021, the court granted the State's motion to reconsider and advised that Hansen's only remedy was to move to set aside the forfeiture order under Iowa Code section 809A.16. The court gave Hansen until December 22 to file that motion. On December 6, Hansen moved to set aside the State's in rem judgment obtained under chapter 809A. Her motion asserted that she was not served with the forfeiture complaint and the "in rem judgment was of no effect versus her." She also urged that the State knew or should have known that she was a resident of the house and a "possible owner" of the cash. The State resisted, arguing that Hansen did not make the prima facie showing necessary under section 809A.16 to set aside the forfeiture order.

On December 27, 2021, the court granted Hansen's motion and filed an order setting aside the in rem judgment. The State did not appeal that order. Rather, in January 2022, the State amended its in rem forfeiture complaint to include notice to Hansen, along with Brooks. Hansen's original answer sought the return of all seized money—$43,877. But in an amended answer, she only claimed ownership of $41,942. According to Hansen, the rest of the seized currency, $1935, belonged to her son.

The court then held a series of hearings on the merits of Hansen's claim. Hansen testified that she has "never had a bank account, checking account, debit card, credit card in [her] whole life." She swore that she had only done business in cash. She had worked as a waitress since she was fourteen years old. She lived frugally, and "kept all of her money in shoes" in her closet. When she moved

in with her son, she "got the safe." She testified that at first the upstairs bedroom was hers but then she moved to the basement. Hanson explained: "It's a heavy safe to haul it downstairs, and I didn't think nothing about leaving it in the closet."

Hansen also told the court that she received the bulk of the $40,000 plus she saved from an individual named Kirk, an "eccentric millionaire" and regular customer at Perkins, who left exceedingly generous tips. Hansen called other witnesses who corroborated that Kirk would give female servers as much as $500 to $1000 for a gratuity.

To counter Hanson's claims, the State offered the testimony of Detective Howe. He testified that on the day of the search, Brooks said nothing located in the upstairs bedroom belonged to his mother. The detective had also interviewed Hanson who "confirmed that." Howe also testified that keeping bundles of cash in the safe was consistent with the practice of a drug trafficker. On cross-examination, the detective acknowledged the safe contained a stack of $1 bills, which was more consistent with savings from a waitress than the proceeds of drug deals. The detective, whose testimony came on the third day of hearings, also conceded that he had not investigated Hansen's claim as to the source of the cash.

After hearing all the evidence, the court found Hansen's claim was "plausible" and ordered the State to return the $41,942 to her. The court reasoned:

> She has presented evidence to corroborate her claim that the vast majority of the money was given her by a benevolent, rich, eccentric millionaire over the course of several years. The Court recognizes how ludicrous that statement might appear to someone who reads it in isolation and who did not hear the evidence presented in this case, but the State simply has not met its burden of disproving this claim which Hansen corroborated with other credible evidence.

The court also awarded Hansen reasonable attorney fees. The State appeals.

**II.    Scope and Standards of Review**

This appeal stems from the vacation of an in rem judgment. And we review proceedings for the vacation of judgments on assigned errors. *In re Armstrong-Harris*, No. 13-1922, 2014 WL 5243479, at *1 (Iowa Ct. App. Oct. 15, 2014). "The district court is vested with considerable discretion when ruling on a petition to vacate judgment, and we will only reverse if that discretion has been abused." *Id.* On the threshold question of jurisdiction, our review is for correction of errors at law. *Yulin Li ex rel. Lee v. Rizzio*, 801 N.W.2d 351, 357 (Iowa 2011).

**III.    Analysis**

The State argues that the district court should not have set aside the original in rem forfeiture order. The State first insists there was no reason to believe that "anyone other than Brooks was the owner of the seized property and therefore, no reason to serve Hansen with notice." In a second attack, the State contends that Hansen's challenge to the forfeiture order was untimely; though in the absence of statutory direction, it asks for "guidance on what is the appropriate timeline" for that kind of challenge.

But before we address the State's contentions, we must decide whether its appeal was timely. If not, we have no jurisdiction. *Jones v. State*, 981 N.W.2d 141, 145 (Iowa 2022). "A notice of appeal must be filed within 30 days after the filing of the final order or judgment." Iowa R. App. P. 6.101(1)(b). The debate here is whether the court's December 27, 2021 order setting aside the in rem forfeiture judgment was a "final order or judgment" that could be appealed.

The appellate rules describe what orders may be appealed:

> All final orders and judgments of the district court involving the merits or materially affecting the final decision may be appealed to the supreme court, except as provided in this rule, rule 6.105, and Iowa Code sections 814.5 and 814.6. An order granting or denying a new trial is a final order. An order setting aside a default judgment in an action for dissolution of marriage or annulment is a final order. An order setting aside a default judgment in any other action is not a final order.

Iowa R. App. P. 6.103(1).

And our supreme court has articulated the distinction between final decisions and interlocutory rulings.

> A final judgment or decision is one that finally adjudicates the rights of the parties. It must put it beyond the power of the court which made it to place the parties in their original position. A ruling or order is interlocutory if it is not finally decisive of the case.

*Johnson v. Iowa State Highway Comm'n*, 134 N.W.2d 916, 918 (Iowa 1965). In *Johnson*, the district court granted defendant's motion to strike certain allegations in a civil petition. *Id.* The plaintiff did not have a direct appeal from that ruling because there was no final disposition dismissing the suit or judgment for the defendant on the whole cause. *Id.* On the other hand, an order is final when it leaves the district court with "nothing more to do than execute that order." *In re Dethmers Mfg. Co.*, 985 N.W.2d 806, 813 (Iowa 2023) (holding court's refusal to quash subpoena in special action for interstate discovery was a final order).

Distinguishing between final and interlocutory orders can be difficult. *See In re Est. Troester*, 331 N.W.2d 123, 125 (Iowa 1983) (noting purpose of requiring final order was to prevent delay by piecemeal appeals). What's more, final judgments are not limited to judgments entered on a verdict after trial; they may exist in other forms. *Stearns v. Kean*, 303 N.W.2d 408, 410 (Iowa 1981). One of

those other forms is a ruling on a motion to set aside a *final* judgment. *See Sheldon v. Moyer*, 210 N.W.2d 597, 599 (Iowa 1973) ("In the absence of an appeal from the order determining the [Iowa Rule of Civil Procedure Rule 1.1012] petition, we are without power to review it.").

But instead of *Sheldon*, the State relies on *Davenport Bank & Trust Co. v. City of Davenport*, 318 N.W.2d 451, 454–55 (Iowa 1982), for the proposition that a refusal to set aside a *default* judgment was not a final appealable order. There, the court recognized the difference between motions to set aside a final judgment like in *Sheldon* and motions to set aside a default judgment like in *Davenport*. When the court refused to set aside a default judgment, it was not finally decisive of the case; "the determination of damages and rendition of judgment remained." *Id.* at 454.

Here, the State asks us to "construe the entry of the in rem judgment akin to a civil default judgment."[5] Such a construction would be flawed. Iowa Rule of Civil Procedure 1.971(1) lists ways a party can be held in default, including a failure to serve an answer under rule 1.303. But forfeiture actions do not always invoke the rules of civil procedure. Iowa Code § 809A.12(17) (proceedings are governed by civil-procedure rules "except as otherwise provided by this chapter"); *see In re Prop. Seized for Forfeiture from Burgess*, No. 01-1968, 2002 WL 31757526, at *2 (Iowa Ct. App. Dec. 11, 2002) (holding rule 1.972 did not apply to the civil forfeiture proceeding).

---

[5] True, Hansen captioned her filing as a motion to set aside a *default* judgment. But that caption is not binding. Hansen was seeking to set aside a final forfeiture order. And the court granted that motion, mentioning nothing of default.

In line with *Burgess*, the default provisions of rule 1.971(1) do not apply to Hansen's challenge. The State pursued an in rem forfeiture judgment under section 809A.13—serving Brooks as the only potential claimant. And while Brooks did not respond to the complaint, he was not the defendant in this proceeding—the property was. "[T]he defendant in a forfeiture proceeding is the property sought to be forfeited, not its owner." *In re Prop. Seized from Hickman*, 533 N.W.2d 567, 568 (Iowa 1995) (declining to apply civil procedure rule on guardians ad litem to forfeiture proceeding). And unlike the default order in *Davenport*, the March 1, 2019 forfeiture order was finally decisive of that case; it divested Brooks of the property's ownership and transferred title to the State. It *was* the rendition of judgment. Underscoring the finality, Hansen's request for the return of the seized property in August 2021 was the next action on the docket. Because in rem forfeiture judgments under chapter 809A are not equivalent to in personam default judgments, *Davenport* is not controlling here.

As the district court concluded, Hansen's proper course was a motion to set aside the in rem forfeiture order. Only if that motion succeeded could the court determine whether the State should retain title to the property. Once Hansen met the court's deadline for filing that motion and the court granted it, the issue now raised by the State was fully decided. That issue—whether the district court erred in setting aside the forfeiture order—did not hinge on the merits hearing that would follow. Indeed, the State is not contesting the court's holding on the merits and largely avoids the facts developed in that proceeding.[6] This situation is not one

---

[6] In oral argument, counsel for the State acknowledged that the facts developed at the merits hearing could "inform" our analysis of the district court's decision to set

where the State's appeal from the order setting aside the judgment would have promoted piecemeal litigation and wasted judicial resources. *See, e.g.*, *In re T.R.*, 705 N.W.2d 6, 10 (Iowa 2005) ("[R]efusing to allow [piecemeal] appeals promotes judicial economy and efficiency, waiting for a final order [gives] our court the benefit of the district court's careful consideration of the issue . . . ."); *Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 887 (Iowa 1985) ("Piecemeal appeals often contribute little more to the judicial process than additional expense and delay."). Just the opposite. It could have saved judicial resources if the State was correct in its position.

Once the district court set aside the original forfeiture order, it was beyond the power of that court to place the parties in their original position.[7] *See Kent Feeds, Inc. v. Stanwood Feed & Grain Co.*, 186 N.W.2d 593, 596 (Iowa 1971). After the court decided that Hansen made a prima facie showing she was an interest holder in the seized funds, and she had not received notice of the forfeiture, it vacated the forfeiture order. The parties were back to square one.[8] No proceedings were pending.[9] *See* Iowa Code § 809A.13(2) ("An action in rem may be brought by the prosecuting attorney pursuant to a notice of pending forfeiture

---

aside the original judgment but should be viewed in "combination" with the information collected at the time of seizure.

[7] We find it helpful to imagine what would have happened if the court had denied Hanson's motion to set aside the judgment. Her only remedy would have been a direct appeal. The situation in this case is a mirror image of that scenario and is telling as to whether the State could have appealed that order.

[8] This restart is similar to the parties' positions after an order granting a new trial, which is a final order under rule 6.103(1).

[9] Granted, the district court's order says: "Ms. Hanson's claim to the forfeited funds should be heard on the merits." But that merits hearing would only happen if the State decided to restart the forfeiture proceedings. The order did not purport to take any of the actions available to the court under Iowa Code section 809A.12.

or verified complaint for forfeiture."). After the court set aside the original order, the State possessed the seized property and needed to choose whether to return it or start the forfeiture proceedings anew—with proper notice to Hansen. The State chose the second route. Once it went down the path, the State was limited to appealing the November 22, 2022 order denying its amended in rem forfeiture complaint. Indeed, the State identified that order in its December 19 notice of appeal but affirmatively states that it is not challenging that outcome now.

The court's order setting aside the in rem forfeiture was a final appealable order. Because the State did not appeal within the thirty-day deadline as required by rule 6.101, we lack jurisdiction to hear this case.

**APPEAL DISMISSED.**